IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 41338-2013

| | | |
|---|---|---|
| MOSELL EQUITIES, LLC, an Idaho limited liability company, | ) ) ) | Boise, December 2014 Term |
| Plaintiff-Respondent, | ) ) | 2015 Opinion No. 9 |
| v. | ) ) | Filed: January 26, 2015 |
| BERRYHILL & COMPANY, INC., an Idaho corporation; JOHN E. BERRYHILL, III; and AMY BERRYHILL, individually, and as husband and wife, | ) ) ) ) ) | Stephen W. Kenyon, Clerk |
| Defendants-Appellants. | ) ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County. Hon. Dennis E. Goff, Senior District Judge.

The order of the district court is reversed.

Daniel E. Williams, Thomas Williams & Park, LLP, Boise, argued for appellants.

Paul R. Mangiantini, Clark & Associates, Eagle, argued for respondent.

_____

EISMANN, Justice.

This is an appeal out of Ada County from an order granting respondent a new trial. We reverse the order of the district court and remand this case for entry of a judgment that is consistent with the jury verdict.

**I.**
**Factual Background.**

On June 28, 2007, Mosell Equities issued a check to Berryhill & Co. in the sum of $50,000. The word "loan" was written on the memo line of the check. John Berryhill, the owner and president of Berryhill & Company, Inc., photocopied the check and wrote below the image of the check the following:

This is a loan from Mosell Equities to cover some misc. downtown expenses during our bookkeeper transition. It will go into the general check register + be used for any billing of payables needed for downtown or Berryhill & Co.

It will be transitioned into part of Glenn's "buy in" of MoBerry Venture Corp. Inc.

Mr. Berryhill signed the document as did Glenn Mosell, the owner and managing member of Mosell Equities, LLC. Over the next ten months, Mosell Equities issued nine additional checks to Berryhill & Company, all but two of which had "loan" written on the memo line. The ten checks totaled $405,000.

On May 28, 2009, Mosell Equities filed this action against Berryhill & Company and Mr. and Mrs. Berryhill (collectively herein referred to as "Berryhill"). The complaint alleged that Mosell Equities had loaned money to Berryhill and that it had failed to repay the loans. The case was tried to a jury in September 2009. During the trial, Messrs. Mosell and Berryhill provided widely divergent testimony regarding their relationship, whether the checks were actually loans, and what had transpired. The essence of their divergent views is set forth in greater detail in the prior appeal in this case, *Mosell Equities, LLC v. Berryhill & Co., Inc.*, 154 Idaho 269, 297 P.3d 232 (2013).

The jury returned a verdict in favor of Berryhill on the claims regarding the alleged loans. Mosell Equities filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The district court granted a judgment notwithstanding the verdict as to part of a claim for relief, and this Court reversed that order on appeal. *Id.* at 280, 297 P.3d at 243. On remand, the district court granted Mosell Equities a new trial, and Berryhill appealed.

**II.**
**Did the District Court Err in Granting Mosell Equities a New Trial?**

The district court granted Mosell Equities a new trial on the ground of the insufficiency of the evidence to justify the verdict. The standard for granting a new trial on that ground is as follows:

> A trial judge may grant a new trial on that ground if, after making his or her own assessment of the credibility of the witnesses and weighing the evidence, the judge determines that the verdict is not in accord with the clear weight of the evidence. The judge is not required to view the evidence in the light most favorable to the jury's determination, but may grant a new trial even if there is

2

substantial evidence supporting the verdict. The judge must also conclude that a different result would follow a retrial.

*Hudelson v. Delta Intern. Machinery Corp.*, 142 Idaho 244, 248, 127 P.3d 147, 151 (2005) (citations omitted).

"When reviewing a trial judge's grant of a new trial on appeal, this Court applies the abuse of discretion standard." *Id.* In making a determination of whether a trial court abused its discretion, this Court considers: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Rockeller v. Grabow*, 139 Idaho 538, 545, 82 P.3d 450, 457 (2003).

In this case, Berryhill argues that the district court erred in granting a new trial because it granted a new trial on a theory of recovery that was not tried to the jury. We agree.

Mosell Equities brought this action contending that it had made loans to Berryhill that it failed to repay. It contended that the loans were made while the parties were considering entering into a business relationship, but they never did so. The amended complaint alleged, "Mosell Equities loaned these funds to John Berryhill and Berryhill & Company, Inc. while Glenn Mosell and John Berryhill were considering establishing a business relationship, initially in a company called MOBERRY, and subsequently, by Mosell Equities acquiring a 50% ownership in Berryhill & Company, John Berryhill's corporation." The amended complaint reiterated that these sums were loans, and it alleged that Berryhill breached the contract "[b]y refusing to repay the loan"; that it breached an implied-in-fact contract because it "ha[s] and continue[s] to refuse to repay the loan"; and that Mosell Equities provided a benefit to Berryhill "by loaning them $405,000" and that it was "inequitable and unjust" for Berryhill "to retain the benefit of the $405,000.00 loan without compensating Mosell Equities for the principle [sic] amount of the loan plus accumulating statutory interest."

Mr. Mosell testified that Mosell Equities loaned the money in contemplation of purchasing a one-half interest in a new company to be formed called MoBerry, Inc., which would own Berryhill & Company, and then in contemplation of purchasing a one-half interest in Berryhill & Company. He admitted that Berryhill & Company was not worth $800,000.

However, he testified, "I agreed to take the 387,000 that was agreed upon earlier to an even $400,000 for 50 percent of the Berryhill & Company stock."

Documents were prepared to consummate that transaction, but Mr. Mosell did not sign them. He testified that he told Mr. Berryhill that the economic downturn was bigger than they thought and that "$400,000 was too much for me to keep in the restaurant. That instead of converting $400,000 to 50 percent of the restaurant, for 200 shares, that I would like to look at owning fewer shares and getting some cash back."

Mr. Mosell testified that he gave Mr. Berryhill the option of Mosell Equities having a 25% ownership interest in Berryhill & Company and receiving back $200,000 (either from Berryhill or by Mr. Berryhill finding another investor to pay the $200,000) or by Berryhill paying back $400,000 or working out a repayment plan.

Thus, Mr. Mosell's version of the transaction was that Mosell Equities loaned Berryhill $400,000, and it was not obligated to purchase any stock in Berryhill & Company. It could purchase 50% of the stock for $400,000; or 25% for $200,000 and receive back $200,000; or not purchase any at all and receive back $400,000. He testified that he had the right to demand repayment because "[i]t was a short-term loan."

In its motion for a new trial, Mosell Equities argued that the parties had agreed that it would purchase 50% of Berryhill & Company for $400,000 and that "Berryhill refused to tender stock or any equity in Berryhill & Co., Inc., and then refused to return Mosell Equities' money." In granting the new trial, the district court agreed.

It held that the writing on the copy of the check mentioned above was a signed contract, which "indicated that this loan 'will be transitioned into part of Glenn's "buy in" of Moberry Venture Corp. Inc.'" It then held that Berryhill breached that contract by failing to deliver stock representing a 50% interest in either Moberry Venture Corp., Inc., or Berryhill & Company. The court wrote as follows:

> It is undisputed that Mosell Equities paid Berryhill & Company $405,000.00. It is undisputed that the proposed buy-in never happened— Berryhill & Company never gave Mosell Equities shares in the proposed MoBerry Corporation or the established Berryhill & Company. . . . It has been nearly six years to the day of this initial signed writing without the provided funds being transitioned into a "buy-in." Based on the Court's review of all the evidence, more than six years to transition the funds into a "buy-in" is an unreasonable time for performance. Thus, although Mosell Equities performed its obligations to Berryhill & Company under the contract by providing the requisite

funds, Berryhill & Company did not completely perform its obligations within a reasonable time by failing to transition the funds into a "buy-in." Therefore, the clear weight of the evidence establishes that Berryhill & Company breached the express contract.

The court also concluded that the jury on a retrial "will find contrary to the first jury by finding an express contract that Berryhill & Company breached by failing to perform within a reasonable period of time."

There is a significant difference between the theory upon which this case was tried by Mosell Equities and the theory upon which the district court granted a new trial. Mosell Equities tried this case upon the theory that it agreed to make a short-term loan to Berryhill while the parties contemplated whether they could reach an agreement regarding whether Mosell Equities would decide to acquire up to a 50% interest in either a corporation to be formed or Berryhill & Company. It later decided it wanted either a 25% interest in Berryhill & Company and $200,000 of the short-term loan repaid or it wanted the entire $400,000 loan repaid.

The district court granted a new trial on the theory that the parties had entered into a binding contract under which Mosell Equities paid $400,000 for a 50% interest in either the corporation to be formed or Berryhill & Company and Berryhill breached that express contract by failing to transfer a 50% interest in either of those corporations.

Under the theory upon which this case was tried, Mosell Equities was not obligated to acquire any portion of the two corporations. Under the theory upon which the district court granted a new trial, Mosell Equities was contractually obligated to acquire a 50% interest in one of the two corporations. There may certainly be a reason why Mosell Equities brought this action on the theory that there was a loan rather than the theory that there was a contract to acquire a 50% interest in one of the two corporations.

The demand letter sent on February 20, 2009, to Mr. and Mrs. Berryhill did not demand a 50% interest in Berryhill & Company, nor did it demand that they form a new corporation and issue 50% of the stock to Mosell Equities. The demand letter stated that "it is clear that the legal relationship between Mr. Mosell and Berryhill & Company is that of lender to borrower, respectively." It also stated, "While it may have been contemplated at one point in time that Mr. Mosell was to become a shareholder in your company, the fact remains that no such transaction was ever completed." Because a 50% interest in Berryhill & Company was not worth $400,000, Mosell Equities may have chosen to frame this lawsuit as merely a loan in contemplation of

5

entering into a later agreement rather than the breach of an agreement to purchase a 50% interest in Berryhill & Company.

"Where a plaintiff has chosen to submit his case upon certain issues or theories, they are bound by those choices, and it is error for the trial court to afterward grant one party a new trial on the basis that the plaintiff might have prevailed had it raised a different issue*." Heitz v. Carroll*, 117 Idaho 373, 378, 788 P.2d 188, 193 (1990). By granting the motion for a new trial in order to enable Mosell Equities to try the case on a theory it did not raise in the first trial, the district court abused its discretion by failing to act consistently with the applicable legal standards. Therefore, we reverse the order granting a new trial.

### III.
### Is Either Party Entitled to an Award of Attorney Fees on Appeal?

Both parties request an award of attorney fees on appeal pursuant to Idaho Code section 12-120(3) on the ground that this was an action to recover in a commercial transaction. "That statute provides that in any civil action to recover in a commercial transaction, the prevailing party shall be allowed a reasonable attorney fee." *Advanced Med. Diagnostics, LLC v. Imaging Ctr. of Idaho*, LLC, 154 Idaho 812, 816, 303 P.3d 171, 175 (2013). Because Berryhill & Company is the prevailing party on appeal, it is entitled to an award of attorney fees and Mosell Equities is not.

### IV.
### Conclusion.

We reverse the order granting a new trial and direct the district court to enter a judgment consistent with the jury verdict. We award appellants costs and attorney fees on appeal.

Chief Justice BURDICK, Justices J. JONES, HORTON, and Justice Pro Tem WALTERS **CONCUR.**